## FOSTER & *a. v.* LANE & *a.*

" The inhabitants of that portion of the territory of C. & L., known as the C. & L.
Union School District," are not a corporation known to the law.

A justification under the title of such " inhabitants," is bad, unless the names
are given.

Before the Revised Statutes, there was no provision for the union of school dis-
tricts in different towns.

A deed to the inhabitants of the C. & L. Union School District, if it has any
effect, must vest the title in the individual inhabitants.

In an action of trespass before a justice, a plea of title in a third person, or in
the defendant, with a traverse of the plaintiff's title, is good.

So a plea merely denying the plaintiff's title is good, though it would be bad at
common law.

In TRESPASS brought before a justice of the peace, the dec-
laration was as follows :

In a plea of trespass, for that the defendants, on the eighth
day of October, A. D. 1851, with force and arms, did break
and enter the plaintiffs' close, situated in Loudon aforesaid,
bounded southwesterly by the highway leading from Chi-
chester aforesaid, by the dwelling-house of Stephen Perkins,
in said Chichester, to Loudon Centre, northwesterly by land
of Oliver W. Morrill, northeasterly by the plaintiffs' pasture
land, and southeasterly by the line dividing said Chichester
from said Loudon, containing ten acres, more or less, and
their grass there growing did tread down and consume, and
then and there, with force as aforesaid, did throw down the
bars and posts of the plaintiffs, and also ten feet of the plain-
tiff's wall, belonging to and enclosing the said close ; and
then and there dug up and subverted the soil and earth, to-
gether with other the grass of the plaintiffs, then and there
respectively growing and being, and then and there erected
and built a great part of a certain school-house in and upon
the said close, and then and there put out and expelled the
plaintiffs from the possession and occupation of a great
part of their said close, and kept and continued them so

put out and expelled, and the said part of the said school-house, so by them erected on the said close as aforesaid, for a long time, to wit: from thence hitherto; whereby the plaintiffs, during all that time have lost, and by reason of the said building will hereafter lose and be deprived of the free and entire use and occupation of their said close; and other wrongs to them did, against our peace and to the damage, &c.

The defendants pleaded as follows:

1. And the said defendants come and defend, &c., when, &c., and say that the plaintiffs, their action aforesaid against them ought not to have and maintain, because they say that the close mentioned in the plaintiffs' declaration, long before the committing of said supposed trespasses, to wit: on the twenty-ninth day of March, in the year of our Lord, 1830, was the soil and freehold of the inhabitants of that portion of the territory of Chichester and Loudon, known as the Chichester and Loudon Union School District; and the said inhabitants of said school district were then seized thereof in their own demesne as of fee; and the said inhabitants of said school district had then erected upon said close a school-house for the use of said district, as they had a right to do; and said inhabitants of said district have from time to time since that time repaired and maintained said school-house, as they had good right to do; and the said inhabitants of said school district, on the second day of April, A. D. 1851, at a legal meeting of said district, duly called and holden for that purpose, voted that said school-house should be repaired, and appointed M. G. Lane and D. Lake, two of the defendants, as agents for said inhabitants of said district, to enlarge and repair said school-house, in accordance with said vote; and the said Lane and Lake, on the said eighth day of October, A. D. 1851, the day on which said supposed trespasses are alleged to have been committed, in accordance with the vote of the said inhabitants of said district aforesaid, and the said C. T. Lane and J. S.

Foster *v.* Lane.

Clifford, as servants of the said M. G. Lane and D. Lake, and by their command, entered upon said close, for the purpose of repairing said school-house as aforesaid, as they had good right to do, and proceeded to repair the same in accordance with said vote, and for the purpose of so repairing said school-house, and in the proper and legitimate performance of their duty as said agents and the servants of said agents, they trod down the grass and removed a portion of the bars and posts and wall in the immediate neighborhood of said school-house, and built an addition to said school-house,— all of which they had good right to do; which are same supposed trespasses complained of in the plaintiffs' declaration, and this they are ready to verify; wherefore they pray judgment if the plaintiffs their aforesaid action thereof against them ought to have and maintain.

2. And for further plea, &c., they say that for more than twenty years before the committing of said supposed trespasses, the said inhabitants of said Chichester and Loudon Union School District, in their united capacity as said district, have used and occupied said close for the purposes of schooling, and have maintained thereon a school-house for said purposes, and have from time to time repaired said school-house,—all of which they had good right to do, and all of which they have done without hindrance or objection or adverse claim on the part of any person or persons whatsoever; and in the inhabitants of said district, in their united capacity as said district, on the second day of April, A. D. 1851, at a legal meeting of said district, duly called and holden for that purpose, voted that said school-house should be repaired, and appointed M. G. Lane and D. Lake, two of said defendants, as agents for said district to repair said school-house, in accordance with said vote; and &c., as in the last plea.

3. And for further plea, &c., thay say that long before, &c., to wit: on the twenty-ninth day of March, A. D. 1830, one Joshua Lane was seized in his demesne as of fee, of

and in the said close in the said declaration mentioned, and in which, &c., with the appurtenances, and being so thereof seized, afterwards and before the committing of said supposed trespasses in said declaration complained of, to wit: on the day and year last mentioned aforesaid, by his certain deed or writing obligatory of that date, which said deed or writing obligatory, sealed with the seal of the said Joshua Lane, the defendants now bring here into court, the date whereof is the day and year last mentioned aforesaid, let, leased and sold said close in the plaintiffs' declaration mentioned, and in which, &c., to the said inhabitants of said Chichester and Loudon Union School District in the language following, to wit:

" Know all men by these presents, that I, Joshua Lane of Chichester, in the county of Merrimack and State of New Hampshire, Esquire, that whereas a number of inhabitants in the towns of Chichester and Loudon, in said county of Merrimack, have united into a school district, by the name of the Chichester and Loudon Union School District, and have been set off by a vote of said towns as a district or districts ; and furthermore have erected a school-house for the use of said district. For and in consideration of or of my own free will have let, leased and sold, and by these presents do let, lease or sell to and for the use of said district, the land whereon the school-house now stands, being part in Chichester and part in Loudon aforesaid, and also a privilege of erecting a wood-house adjoining said school-house, not exceeding twelve by fourteen feet,—to have and to hold the said leased premises, with all privileges and appurtenances thereto belonging, to the said district, so long as they and their heirs shall continue to be a district, and shall see fit to continue said house or houses on said premises."

And the said inhabitants in said Chichester Union and Loudon School Districts thereupon, on said last-mentioned day, entered upon and took possession of said close by virtue of said

deed, and being so possessed, the said plaintiffs claiming title to said close, in which, &c., with the appurtenances, under color of a certain chapter of demise, pretended to be thereof made to them by the said Joshua Lane, for the term of their natural life, before the making of the said demise, by the said Joshua Lane, to the said inhabitants of said Chichester and Loudon Union School District as aforesaid, whereas nothing of or in the said close in which, &c., or any part thereof, ever passed by virtue of that charter afterwards and before the said time when said supposed trespasses are alleged to have been committed, and during the continuance of the said term so demised to the inhabitants of the Chichester and Loudon Union School District as aforesaid, to wit: on the said day mentioned in said declaration on which said supposed trespasses are alleged to have been committed, entered into and upon the said close in which, &c., with the appurtenances, and was thereof possessed; and the said inhabitants of said Chichester and Loudon Union School District being possessed of said close in which, &c., by virtue of said deed or writing obligatory of said Joshua Lane aforesaid, on said 29th day of March, A. D. 1830, being the day of the date of said deed or writing obligatory, had there erected upon said close in which, &c., a school-house, as they had good right to do, and had from time to time since said last-mentioned date aforesaid, the same as they had good right to do, and said inhabitants of said district, on the second day of April, A. D. 1851, at a legal meeting thereof, duly called and holden for that purpose, voted that said school-house should be repaired, and appointed M. G. Lane and D. Lake, two of the defendants, as agents for said inhabitants of said district, to repair said school-house in accordance with said vote; and, &c., substantially as in the first plea.

4. And for further plea, &c., said defendants say that the said close, at the time when said trespasses are alleged to have been committed therein, was the soil and freehold of said Chichester and Loudon Union School District, and

still is, and that said district were and still are lawfully and actually seized and possessed thereof. Without this that the plaintiffs, or either of them, ever had any title or estate therein, or any lawful, legal, or actual possession thereof; and this, &c. Wherefore, &c.

5. And for further plea, &c., they say that the said close, at the time when the said trespasses are alleged to have been committed therein, was, and still is, the soil and freehold of the inhabitants of said Chichester and Loudon Union School District, and the said inhabitants were, and still are, lawfully and actually seized and possessed thereof, without this that the said plaintiffs, or either of them, then or at any other time, had any title thereto or were ever lawfully or actually seized or possessed thereof; and this, &c.

6. And for further plea, &c., they say that the close aforesaid is not, and never was, the soil and freehold of the plaintiffs, or either of them ; that they have not, nor have either of them, nor have they or either of them, ever had any title thereto or any legal or actual seizin or possession thereof; and this, &c. Wherefore, &c.

By their attorneys,

BAKER & PEABODY.

Upon these pleadings no further proceedings were had before the justice, and the plaintiffs having entered their action in the court of common pleas, they there demurred specially to the first and second pleas.

And to the first, show to the court the following causes of demurrer :

The defendants allege that said close was, on the 29th day of March, 1830, the soil and freehold of certain persons under whom defendants claim to have done the supposed trespasses as agents, without alleging that said close was their soil and freehold at the time of committing said trespasses, or any subsequent time,—and have not set out sufficiently the persons, nor any legal body, in whom

they allege the title to said close,—and is argumentative.

And to the second plea, the following causes of demurrer :

The defendants do not set out sufficiently the persons nor any legal body in whom they allege the title to said close, and is also argumentative. The plea does not state title in the school district, but only evidence of title, and that not conclusive or even competent.

By their attorneys,

NORRIS & CLARK.

And to the remaining pleas they demurred generally, and the demurrers were joined.

*H. A. Bellows* (with whom were *Norris & Clark,*) for the plaintiffs.

I. The first plea does not allege that the close was the soil and freehold of the inhabitants, &c., at the time of the trespasses committed.

2. The plea does not give the names of the inhabitants, &c., nor does it show a corporation capable of holding. The names should be stated. Steph. on Pl. 300.

3. The plea is also argumentative. *Simpson* v. *Coe*, 3 N. H. Rep. 12, stating the close was part of Spinney place, and Spinney place was defendants' close.

II. In the second plea, neither the names of the inhabitants are given, nor any body capable of holding the title is shown.

2. It is not stated that the inhabitants were seized at the time of the trespasses.

3. No title is stated in the inhabitants, only evidence of it, and that not competent, not stated to be adverse, and so presumed to be in subordination to the owner.

4. This plea is also argumentative.

III. As to the third plea in the case.

2. The names of the inhabitants are not given, and no corporate body is shown capable of holding title.

3. There is no allegation that they continued to be a school district, or continued the school-house, and so for aught that is stated, the lease has expired.

4. There is no direct allegation that the title under the lease was continued to the time of the trespasses.

The fourth and fifth pleas, stated in the case, are subject to the same objections as the others, for want of names, or stating a legal corporation.

And the sixth amounts to the general issue, and so is bad. Steph. on Pl. 418.

*Peabody*, with whom were *Baker*, *Perley*, *Fowler* and *Hayes*, for the defendants.

I. The first plea sufficiently alleges soil and freehold in the inhabitants, &c., at the time of the supposed trespasses. It alleges that on the 29th of March, 1830, they were seized, &c., and had erected a school house, &c., and had from time to time repaired, and had maintained the same, and that on the day of the alleged trespasses the defendants proceeded to repair the same, according to the vote of the inhabitants of the district.

It may be said that seizin at the time of the alleged trespasses is only argumentatively alleged. But that objection is not taken to any specific part of the plea, and the plea is good until the objection is properly made, and the parts of the plea open to the objections stated. See authorities after referred to.

2. The allegation of soil and freehold in " the inhabitants of the portion of Chichester and Loudon known as the Chichester and Loudon Union School District," is sufficient, without giving the names of such inhabitants. They need not be a corporation in order to hold the property. *2d Cong. Soc.* v. *1st Cong. Soc.*, 14 N. H. Rep. 328, 329.

3. The plaintiffs' allegation, that the plea is argumen-

tative, is not sufficient. He should specify the portion that is argumentative, and state wherein it is so. Gould's Pl. 465, § 16 ; 1 Chitt. Pl. 667.

II. In the second plea the parties capable of holding the property are sufficiently described. 14 N. H. Rep. 328, before cited. The plea alleges that the school district had for more than twenty years, &c. The district is a corporation, and can hold land. See authorities after cited.

2. As to the plaintiffs' second objection to this plea, that it does not state " that the inhabitants were seized at the time of the supposed trespasses," we say such seizin is sufficiently alleged. The plea alleges that for more than twenty years before the committing of said supposed trespasses the said inhabitants, &c., have used, &c. This means that during " more than twenty years before the committing," &c. There can be no other natural construction of the language. This is the natural meaning, and any other construction is a forced and illegitimate one. A seizin once proved, or admitted, is presumed to continue until a disseizin is proved. 1 Greenl. Ev. § 42.

3. Twenty years adverse user is conclusive evidence of a grant, and not simply evidence of it. 2 Greenl. Ev. 539 ; *Tyler* v. *Watkinson*, 4 Mason 402 ; *Cooledge* v. *Learned*, 8 Pick. 504 ; *Sargeant* v. *Ballard*, 9 Pick. 251.

The plea alleges that the inhabitants, &c., had used and occupied " without hindrance or objection, or adverse claim on the part of any person or persons whatsoever." This is a sufficient allegation of adverse user.

4. The allegation that the plea is " argumentative," is insufficient. See authorities before cited.

III. The first objection to the third plea stated in the case has been already answered.

2. The allegation that the inhabitants of the school district " had there erected upon said close, in which, &c., a school house, * * and had from time to time repaired the same, and on the 2d of April, 1851, voted that said.

school house be repaired, and appointed　*　*　two of the defendants, to repair said school house,　*　*　(and the defendants,) on the day on which said supposed trespasses, &c.,　*　*　entered for the purpose of repairing, &c.,　*　* and proceeded to repair," &c., is a sufficient allegation of the continuance of the school district and school house. Moreover, the existence of the school district and school house at a certain time being alleged, the legal presumption is that their existence continued ; and such continued existence need not be alleged.　1 Greenl. Ev. § 41.

3.　The allegation that the title under the lease was continued to the time of the trespass," is sufficiently explicit. It alleges that said inhabitants　*　*　entered upon and took possession of said close, by virtue of said deed, and being so possessed,　*　*　afterwards and before said time, when said supposed trespasses are alleged to have been committed, and during the continuance of said term so demised, *　*　to wit, on the said day,　*　*　entered into and upon the said close,　*　*　and were thereof possessed.

IV.　As to the fourth plea stated in the case, a school district is a public corporation, and can hold land.　*School District* v. *Blaisdell*, 6 N. H. Rep. 197.　.

V.　As to the fifth plea stated in the case, our answer is as before, that the inhabitants of any district, or locality, though they are not incorporated, may take and hold land, &c., and their names need not be given.

VI.　As to the sixth plea in the case, the plaintiff objects on general demurrer, that this plea amounts to the general issue, and is therefore bad.　The plaintiff cannot take this objection on general, but only on special demurrer.　Bac. Ab. Pleas. G. 3 ; 1 Chitt. Pl. 528 ; *York* v. *Jones*, 2 N. H. Rep. 454.

*Perley.*　The last pleas are rendered necessary by the provisions of the statute.　Under the general issue, the defendant cannot introduce evidence of title.　Therefore he may

Foster v. Lane.

plead a special plea denying title, which would be bad at common law, otherwise he cannot take advantage of any defect of the plaintiff's title.

Title must be well pleaded, or the case cannot come here. It must be a plea on which the case can be tried. If the defence is not legally stated, so that it can be tried, the case is not removed from the jurisdiction of the justice.

The demurrer is not well taken; there should be a motion to dismiss the action.

*Bellows*, in reply.

The case comes to the court of common pleas, when a plea is filed before a justice of the peace, which he cannot try.

It does not follow that the case is not here, if the plea is bad. The justice is not to try that. When brought here, the pleas are to be treated as other pleas. They are to be judged of as if originally pleaded in the court above.

BELL, J. No law existed providing for the union of school districts situate in different towns, nor for districts consisting of inhabitants of different towns, until after the passage of the Revised Statutes, in 1842.

From the facts alleged in the deed, recited in the third plea (of the case,) we infer that in the year 1830 a district was in fact formed by the inhabitants of a part of the town of Loudon and of a part of the town of Chichester. And that the inhabitants of those parts of the two towns were constituted a district or districts by votes of those towns, so far as they had power to do it.

School districts are now *quasi* corporations, capable of acquiring and holding real estate, for school houses. Perhaps they might properly be so regarded for some very limited purposes so early as 1830, or earlier. But no law of the State contemplated a district extending into two towns.

" The inhabitants of that portion of the territory of Chi-

chester and Loudon, known as the Chichester and Loudon Union School District," as in the first plea; " The said inhabitants of said Chichester and Loudon Union School District, in their united capacity as said district," as in the second and third pleas, (of the case,) are not a corporation known to the law.

If the deed of Mr. Lane was effectual to convey anything, it must have vested the interest in those who for the time being were the persons inhabiting the district, and the title must be set up in them by name. It is not seen that there is any objection to give the deed this effect, nor to a plea alleging title in the inhabitants who came within that description at the date of the deed, or perhaps in the survivors.

There probably was in each of the towns of Chichester and Loudon a legal district, duly constituted by vote of the town, and each bearing the name of the Chichester and Loudon Union School District, and each capable of taking land by that name. Perhaps, if so, title might be alleged in these districts jointly, and the repairs justified under both. There are not before us, however, sufficient facts, nor is it necessary to decide any question of this kind.

It is enough, for the present, to say that the district named is not alleged to be a corporation known to the law, and the description of the inhabitants, regarded as individuals, is entirely insufficient.

The case cited by the counsel from 14 N. H. Rep. 328, only shows that in equity a devise for charitable purposes will not be defeated because the beneficiaries are not a corporation.

The demurrer as to these pleas must be sustained.

The three last pleas of the case are clearly bad at common law, because they amount to the general issue, being a denial of a part of the facts alleged by the plaintiffs in their declaration, and which they are consequently bound to prove. But as the statute provides that " when any action

Foster *v.* Lane.

of trespass shall be brought before a justice, and the defendant shall plead the general issue, he shall not be allowed to offer any evidence that may bring the title to real estate in question," (Rev. Stat. ch. 175, § 2,) and "if in any such action the defendant shall plead any special plea, by which the title of real estate may be drawn in question," &c., sec. 3, we have heretofore held that the defendant from necessity, and within the evident intention of the law, may plead specially, denying the plaintiff's title, if he thinks proper.

Such pleas by analogy to the pleas of property in the defendant, or property in a stranger, in replevin, may allege the property in a school district, with a traverse of the plaintiff's property. In that case the issue must be upon the traverse.

The objection, that the names of the inhabitants of the school district are not given, applies to the fourth and fifth pleas, by reason of the word *said*, which refers to the former pleas. But the allegations are hardly sufficient to show the district named a corporation. It may be questionable whether this defect is very material, since the issue, if any, must be on the plaintiffs' title.

The last plea is a general denial of any property or interest in the plaintiff, in the premises in question, without anything more; which leaves the burden upon the plaintiff to prove his title, before he can recover, as he would be bound to do upon the general issue. This plea seems to us free from any valid objection, and this opinion is sustained by the case of *Janvrin* v. *Scammon*, 6 Foster's Rep. 362, where the same question arose, and by the cases there cited. *Wheeler* v. *Rowell*, 7 N. H. Rep. 515; 6 Pick. 419; 17 Pick. 217.

The other pleadings may be amended, if desired, on the usual terms.